IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RONDELL A. JOHNSON, as Independent Administrator of the Estate of RODNEY BRADFORD, Deceased, <br><br> Plaintiff, <br> v. <br><br> THE UNITED STATES OF AMERICA, *Et al*, <br><br> Defendants. | 24 CV 11692 <br><br> Hon. Lindsay C. Jenkins |

SYMPHONY OF CALIFORNIA GARDENS, LLC'S MOTION TO DISMISS

Defendant SYMPHONY OF CALIFORNIA GARDENS, LLC, by and through CHARLES AARON SILVERMAN, requests that this Honorable Court DISMISS the Second Amended Complaint, stating:

**Introduction and Facts**

The Second Amended Complaint (2AC) in this matter is premised upon the claim that the United States of America, acting through the University of Illinois Hospital at Chicago (UIC), prescribed and administered to Rodney Bradford (Mr. Bradford) what ended up being lethal doses of methadone as part of his drug-treatment program while Mr. Bradford was being cared for at Symphony of California Gardens. Specifically, it notes that on February 10, 2022, Mr. Bradford was admitted to the University of Illinois Hospital in Chicago with complaints of shortness of breath and tachycardia. During his treatment, UIC medical personnel initiated a methadone regimen at 40 mg/day, partly for pain management, and partly due to Mr. Bradford's history of opioid dependence. 2AC at ¶ 14. However, Mr. Bradford tested negative for opioids when this was

1

begun, which the Complaint suggests should have raised questions as to the clinical justification for a high-dose opioid therapy. 2AC at ¶ 14.

After he was discharged, two weeks later, he transferred to Symphony of California Gardens. 2AC at ¶ 15. Nonetheless, he stayed enrolled at a methadone treatment program administered by Mile Square Health Center. 2AC at ¶ 16. The Complaint notes that Mile Square Health Center is part of UIC (and will therefore simply be referred to as UIC here). 2AC at ¶ 17. The protocols of that program required him to received methadone directly from UIC. 2AC at ¶ 16. Since Mr. Bradford was unable to attend his scheduled appointments, Defendant Dr. Del Priore ordered that he be administered the prescribed methadone through supervised self-administration at Symphony. 2AC at ¶ 18. The Complaint never suggests that Mr. Bradford was given an incorrect dose as a result of Symphony's supervision. Rather, its claim seems to be that Symphony followed UIC's instructions perfectly, and that the instructions constituted a kind of medical malpractice.

On March 10, 2022, Dr. Nicole Gastala, a doctor employed by UIC, raised Mr. Bradford's dose to 50 mg/day. 2AC at ¶ 19. Dr. Del Priore "pursuant to [Dr. Gastala's] order" administered the prescribed dose. 2AC at ¶ 20. In other words, the "mistake" that Dr. Del Priore, and therefore allegedly Symphony, made was to do exactly what Dr. Gastala prescribed. On March 24, 2022, Mr. Bradford was found unresponsive in his room, and was treated by EMS for "suspected opioid toxicity." 2AC at ¶ 21. He died later that day. The autopsy revealed that he died as a result of methadone toxicity due to a lethal concentration of methadone. 2AC at ¶ 22. The Complaint specifically charges Dr. Gastala with negligence in her treatment of Mr. Bradford. 2AC at ¶ 34. The Complaint never suggests that anybody associated with Symphony had the legal authority or

expertise necessary to alter the UIC's prescribed course of treatment. As will be argued, this is because nobody at Symphony had any such authority.

## Argument

I. **Standards on a Motion to Dismiss**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (cleaned up).

When considering a motion to dismiss, courts accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." Lavalais v. Vill. of Melrose Park, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. Iqbal, 556 U.S. at 678.

II. **The Second Amended Complaint does not plead either negligence or causation against Symphony of California Gardens.**

Under federal law, only licensed and registered organizations may dispense controlled substances like methadone. 21 U.S.C. § 823(h). Under the Code of Federal Regulations, such a

program is referred to as an Opioid Treatment Program. See 42 C.F.R. § 8. The Complaint never suggests (and could not) that Symphony of California Gardens was an Opioid Treatment Program like UIC. Rather, the Complaint's claim is that Symphony's agents followed UIC's protocols as ordered, leading to the death of Mr. Bradford. There is no allegation that Symphony deviated from the prescribed treatment *or that it was permitted to do so in any event.*

The Nursing Home Care Act guarantees nursing home residents certain rights, including the right not to be subjected to abuse or neglect by nursing home personnel. 210 ILCS 45/2-107; Harris v. Manor Healthcare Corp., 111 Ill.2d 350, 358 (1986). Neglect is defined as "a failure in a facility to provide adequate medical or personal care or maintenance, which failure results in physical or mental injury to a resident or in the deterioration of a resident's physical or mental condition." 210 ILCS 45/1-117. "Adequate care" has been deemed synonymous with "ordinary care," "due care," or "reasonable care," the terms used to describe the standard of care for negligence. Harris, 111 Ill.2d at 367.

In assessing a duty, there are several factors. "The reasonable foreseeability of injury is one important factor; however, foreseeability alone provides an inadequate foundation upon which to base the existence of a legal duty." Kirk v. Michael Reese Hospital & Medical Center, 117 Ill.2d 507, 525 (1987). Other considerations include the likelihood of the injury, the magnitude of burden of guarding against it, and the consequences of placing that burden upon the defendant. *Id.* at 526. To establish proximate cause, a plaintiff must demonstrate with reasonable certainty that defendant's negligent acts or omissions caused the injury for which she seeks recovery; otherwise, plaintiff has not sustained her burden of setting out a prima facie case of negligence. Morton v. F.B.D. Enterprises, 141 Ill.App.3d 553, 558 (5 Dist., 1986).

4

Here, the Complaint does not explain the failure "to provide adequate medical or personal care or maintenance." In a highly regulated field such as opioid treatment, Symphony was neither qualified nor permitted to intervene in the treatment that was prescribed by UIC. The most that Symphony is accused of doing is following the directions given to it by the expert in the field *and the only party in this Complaint that was permitted to prescribe or alter treatment*. It is almost axiomatic that there was no breach in the standard of care when an institution that is unqualified to make decisions regarding opioid treatment does what it is told by a qualified expert in that field.

To play out the counterfactual, if Symphony had altered the dosage of methadone prescribed by an Opioid Treatment Program, that would have been a breach in the standard of care. If Symphony had done that, and Mr. Bradford had died, the Complaint would certainly have pointed to that breach in the standard of care as the actual and proximate cause of Mr. Bradford's demise. This is specifically because Symphony was legally in no position to interfere with the prescribed treatment, and because Symphony was factually not qualified to so interfere.

For that reason, Symphony's decision to do what was expected of it – follow the Opioid Treatment Program's prescription to the letter – could not be called either the actual or proximate cause of Mr. Bradford's death. This is particularly true given the phrasing of the legal definition of proximate causation as being the foreseeable effect of a breach of duty. There was no breach of duty. Symphony was not reasonably able to foresee that following the directions of an expert in the field would lead to Mr. Bradford's untimely death, especially given that it was legally powerless to alter the treatment.

The Complaint's counts against Symphony are all premised on a theory of negligence – whether statutory or common law. In the case of both common law and statutory (ie, the Nursing

5

Home Care Act) claims, the negligence analysis breaks down the same way: Symphony did what it was told by an expert in the field, and therefore cannot be held liable.

WHEREFORE, Defendant Symphony of California Gardens, LLC requests that this Honorable Court DISMISS the counts against it *with prejudice.*

Respectfully Submitted,

/s/Charles Aaron Silverman
Attorney for Defendant
Symphony of California Gardens, LLC

Charles Aaron Silverman
Charles Aaron Silverman, P.C.
8800 Bronx Ave., Suite 100F
Skokie, IL 60077
(312) 526-3201
Chsilvlaw@yahoo.com