### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Rondell A. Johnson, as Independent Administrator of the Estate of Rodney Bradford, Deceased, | |
| *Plaintiff,* | No. 24 CV 11692 |
| v. | Judge Lindsay C. Jenkins |
| United States of America, *et al.,* | |
| *Defendants.* | |

### MEMORANDUM OPINION AND ORDER

Rodney Bradford suffered a fatal methadone overdose shortly after his admission to California Gardens Nursing and Rehabilitation Center. As relevant here, the administrator of Bradford's estate, Rondell Johnson, filed suit against the owner of California Gardens during Bradford's residency and death, Defendant Symphony of California Gardens, and the current owner of the facility, Defendant California Terrace SNF LLC. He brings claims for negligence and violation of the Illinois Nursing Home Care Act.

California Terrace moves to dismiss Johnson's Second Amended Complaint.[1] The motion is denied.

## I.    Background

In February 2022, Rodney Bradford arrived at the University of Illinois Hospital in Chicago (UIC) with shortness of breath and tachycardia. [Dkt. 36, ¶ 14.][2] After being diagnosed with a right pulmonary embolism, Bradford remained at the hospital for about two weeks. [*Id.*] During those two weeks, UIC medical personnel administered 40 milligrams of methadone per day for pain management because

---

[1]    California Terrace filed its motion to dismiss on August 10, 2025. [Dkt. 52.] The motion raised two issues—the Second Amended Complaint failed to plead facts establishing that (1) California Terrace is liable as a successor, and (2) staff at California Gardens acted negligently in caring for Bradford. On October 1, 2025, the court issued an order denying California Terrace's motion on the latter ground but deferring judgment on the former until Symphony of California Gardens had an opportunity to weigh in. [Dkt. 60.] Having now heard from Symphony of California Gardens, this order addresses whether Johnson stated a claim for negligence against the nursing home Defendants.

[2]    Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

Bradford had a stated history of opioid dependence with opioid-induced mood disorder. [*Id.*] At the time of his admission Bradford tested negative for opioids. [*Id.*]

After his discharge from UIC, Bradford took up residence at California Gardens Nursing and Rehabilitation Center, a skilled nursing facility in Chicago, where he was placed under the care of attending physician, Dr. Anthony Del Priore. [*Id.*, ¶¶ 15, 18.]

While residing at California Gardens, Bradford also enrolled in a methadone treatment program run by Mile Square Health Center (an extension of UIC). [*Id.*, ¶ 16.] Pursuant to protocols and under the supervision of a physician, the program required that Bradford receive methadone directly from Miles Square. [*Id.*] On days he could not attend his scheduled appointments, however, Dr. Del Priore "ordered that Mr. Bradford's prescribed methadone be administered through supervised self-administration" at California Gardens. [*Id.*, ¶ 18.]

On March 10, 2022, Dr. Nicole Gastala, a physician employed by UIC, evaluated Bradford at Miles Square. [*Id.*, ¶ 19.] As part of her treatment plan, she increased Bradford's methadone dose from 40 milligrams per day to 50 milligrams per day, with instructions for further dose increases. [*Id.*]

The next day, Dr. Del Priore "reviewed and adopted Dr. Gastala's methadone prescription modification." [*Id.*, ¶ 20.] So he increased Bradford's methadone dosage to 50 milligrams per day and directed that the "revised dosage be administered under California Gardens' supervision." [*Id.*]

Bradford's health deteriorated while at California Gardens. [*Id.*, at ¶¶ 55, 60.] And about two weeks after his dose increase, members of California Gardens' nursing staff found him in his room unresponsive. [*Id.*, ¶ 21.] After transporting him to a hospital, Bradford was pronounced dead. [*Id.*, ¶ 22.]

Post-mortem testing revealed a fatal methadone overdose. [*Id.*] Bradford had a blood methadone concentration of about 11,0000 nanograms per milliliter—about ten times the upper limit of the recognized fatal range (1,000 ng/mL). [*Id.*, ¶ 24.]

## II. Analysis

At the motion to dismiss stage, the court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826-27 (7th Cir. 2023). A plaintiff does not need to present evidence or prove his case in the pleadings. See *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014). Instead, a plaintiff need only "allege facts which, when taken as true, plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 599 (7th

Cir. 2016) (cleaned up). "[T]he proper question to ask is [] *could* these things have happened, not *did* they happen." *Carlson*, 758 F.3d at 827 (internal citation omitted).

Johnson's Second Amended Complaint sets forth three counts against Defendants: (1) violation of the Illinois Nursing Home Care Act, 210 ILCS 45/1-101, via Illinois's Survival Act, 755 ILCS 5/27-6 (Count II); (2) a Survival Act *respondeat superior* negligence claim (Count III); (3) a *respondeat superior* negligence claim under Illinois's Wrongful Death Act, 740 ILCS 180/1-2.2 (Count IV). [Dkt. 36.]

The Illinois Nursing Home Care Act allows nursing home residents to sue the owners of the facility for "any intentional or negligent act or omission of their agents or employees which injures the resident." 210 ILCS 45/3-601. Illinois courts have analyzed claims under the Act through the same framework as common law negligence. See, *e.g.*, *Myers v. Heritage Enters., Inc.*, 820 N.E.2d 604, 608 (2004).[3] In other words, if the Second Amended Complaint supports that Dr. Del Priore's negligence caused Bradford's death,[4] then he may proceed with both his negligence and Nursing Home Care Act claims.

To state a claim for negligence, Johnson must plead facts demonstrating "(1) the existence of a duty owed by defendant to plaintiff, (2) a breach of that duty, and (3) injury proximately caused by that breach." *Myers v. Heritage Enters.*, Inc., 820 N.E.2d 604, 608 (Ill. App. Ct. 2004).

"A physician has a duty to exercise a reasonable amount of care and skill as is ordinarily possessed by members of his profession." *Iaccino v. Anderson*, 406 Ill. App. 3d 397, 411, 940 N.E.2d 742, 755 (2010). As the attending physician at California

---

[3]    Because Johnson's negligence claims stem from Defendants' medical treatment, he brings a medical malpractice suit. See 735 ILCS 5/2-1704. Under Illinois law, a plaintiff bringing a medical malpractice suit must attach to every complaint an affidavit indicating that he has consulted with a knowledgeable healthcare provider who determined, in a written report, that the claim is meritorious. See 735 ILCS 5/2-622. Johnson attached the required affidavit to his First Amended Complaint, dkt. 14, but has not attached it to the Second Amended Complaint. No party has raised the issue, but the court advises Johnson to refile his complaint with the required affidavit promptly. See *Niewiedzial v. Wexford Health Sources, Inc.*, 2023 WL 3304703, at *5 (S.D. Ill. May 8, 2023) (finding that plaintiff stated claim for medical malpractice but must abide by Illinois's medical malpractice affidavit requirement before summary judgment to avoid dismissal).

[4]    Unlike his claim under the Nursing Home Care Act, which itself holds an owner of a nursing home responsible for the actions of its employees, Johnson's negligence claims require that he show Defendants were vicariously liable for the actions of Dr. Del Priore and other employees involved with his care. An employer can be vicariously "liable for the torts of an employee, but only for those torts that are committed within the scope of the employment." *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007). Defendants have not moved to dismiss Johnson's complaint on the grounds that they are not vicariously liable for Del Priore's or any other employee's actions.

Gardens responsible for Bradford's care, Dr. Del Priore owed him this duty. [Dkt. 36, ¶ 18.]

According to the Second Amended Complaint, on days Bradford could not attend the program at Miles Square, Dr. Del Priore ordered that he receive his prescribed methadone under supervised self-administration at California Gardens. [Dkt. 36, ¶ 18.] The Complaint also states that Dr. Del Priore verified Dr. Gatsala's treatment and increased Bradford's methadone dosage accordingly. [Dkt. 36, ¶ 20.] In all, Johnson alleges that Dr. Del Priore breached his duty by failing to "monitor, supervise, and assess" Bradford's methadone intake, particularly once Dr. Gatsala increased the dosage. [Dkt. 36, ¶ 47.] At the motion to dismiss stage, that is enough.[5]

Defendants' position that they are not liable because Dr. Del Priore simply followed Dr. Gatsala's orders is unconvincing. Dr. Del Priore, as Bradford's attending physician, owed him a duty of care independent of Dr. Gatsala's own duty to Bradford. See *Siwa v. Koch*, 902 N.E.2d 1173, 1176 (2009) (observing that a physician owes a duty to a patient once they enter a "physician-patient relationship").

Contrast Dr. Del Priore's role with that of a pharmacist. A pharmacist, like a physician, has knowledge of a drug's propensities. But unlike a physician, who "must evaluate the patient's needs, assess the risks and benefits of available drugs, prescribe one and supervise its use," a pharmacist has no knowledge of a patient's condition. *Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551, 553 (Ill. App. Ct. 1985). So requiring a pharmacist to intervene when he believes a physician has prescribed a dangerous dosage would involve "interject[ing] himself into the doctor-patient

---

[5] Defendants assert that Johnson cannot use the *res ipsa loquitur* doctrine to demonstrate breach of a duty because both California Gardens and UIC had overlapping control of Bradford's methadone treatment. First, complaints plead claims, and *res ipsa* is not a claim; rather, it is one of many ways a plaintiff may prove breach of a duty. See *Assenato v. Target Corp.*, 2012 WL 205858, at *2 (N.D. Ill. Jan. 24, 2012) ("However, because *res ipsa loquitur* is a rule of evidence, and not a cause of action, a plaintiff need not plead the elements of *res ipsa* in her complaint in order to use it at trial."). As explained above, Johnson offers a theory of breach that does not rely on *res ipsa* so the court need not definitively rule on whether the alleged facts support a *res ipsa* theory of liability. Second, Defendants are mistaken. *Res ipsa* does not require that a single entity had control over the instrumentality that caused a plaintiff's injury; instead, "a plaintiff may benefit from *res ipsa* principles if the plaintiff can present evidence tending to show that the defendants exercised consecutive management or control over the instrumentality that caused plaintiff's injuries." *Samansky v. Rush-Presbyterian-St. Luke's Med. Ctr.*, N.E.2d 386, 392 (Ill. App. Ct. 1990) (emphasis omitted); see also *Heastie v. Roberts*, 877 N.E.2d 1064, 1077 (Ill. 2007) ("[U]nder Illinois precedent, plaintiff is not required to show that his injuries were more likely caused by any particular one of the defendants in order to proceed with his *res ipsa* claim, nor must he eliminate all causes of his injuries other than the negligence of one or more of the defendants.").

relationship and practice[ing] medicine without a license." *Id.* Illinois courts have thus rejected attempts to impose a duty to warn upon pharmacists. See, *e.g.*, *id.*

Those concerns are not present here—Dr. Del Priore played an important role in Bradford's care and undertook responsibility for supervising his methadone treatment.[6] He was in the best position to observe the real-time effects the drug had on Bradford during his time at California Gardens.

Even if Dr. Del Priore was subordinate to Gatsala in the same way a nurse might be to a physician, he could not blindly defer to her treatment plan. When a nurse is "confronted with an 'inappropriate or questionable practice' [he] should not simply defer to that practice, but rather has a professional obligation to the patient to 'take appropriate action,' whether by discussing the nurse's concerns with the treating physician or by contacting a responsible administrator or higher authority." *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (quoting American Nurses Ass'n, Code of Ethics for Nurses With Interpretive Statements, Provision 3.5 (2001)). That is exactly what Johnson alleges Dr. Del Priore should have done here.

Finally, Johnson adequately pleads causation. It is reasonably foreseeable that a physician's failure to properly supervise and assess a patient's methadone use could result in an overdose. See *Stanphill v. Ortberg*, 129 N.E.3d 1167, 1176 (Ill. 2018) ("Legal cause, therefore, is established only when it can be said that the injury was reasonably foreseeable.").

## III. Conclusion

For these reasons, California Terrace's motion to dismiss is denied.

Enter: 24-cv-11692
Date: November 19, 2025

_____
Lindsay C. Jenkins
United States District Judge

---

[6] Defendants aver that they had no authority to alter Dr. Gatsala's methadone prescription because 21 U.S.C. § 823(h) provides that only licensed and registered organizations may dispense the drug. This argument is difficult to follow. Johnson alleges that Dr. Del Priore negligently supervised and monitored a patient's use of methadone that was already prescribed and dispensed.